219 So.2d 716 (1969)
C.L. DRESSEL, Jr., W. Keith Phillips, Jr., W.L. Philbrick, Edmund P. Cooper, John A. Cavalier, William F Dickinson, Edward J. Burke, Charles A. Whiteacre, and Henry Milander, Appellants,
v.
DADE COUNTY, a Body Politic under the Laws of the State of Florida, Appellee.
No. 68-568.
District Court of Appeal of Florida. Third District.
March 4, 1969.
Allen Clements, Jr., Miami Beach, for appellants.
Thomas C. Britton, County Atty., and Stuart Simon, Asst. County Atty., for appellee.
Before CHARLES CARROLL, C.J., and PEARSON and HENDRY, JJ.
*717 PER CURIAM.
The appellants were the plaintiffs in the trial court, and the appellee, Dade County, was the defendant. The appellants brought a taxpayers' class action to prevent the County from collecting taxes for fire protection in any city in Dade County which furnishes its own fire protection.[1]
Following extensive discovery proceedings, the case was submitted to the trial judge for decision without further testimony. The trial judge entered final judgment denying plaintiffs' prayers for relief, and this appeal followed.
It should be noted that the appellants do not question the procedure the judge employed in reaching his decision. Nor do the appellants urge that there is a genuine issue of material fact. The appellants urge that the trial judge should have found from the facts before him that when the appellee expends funds derived from the tax dollars of the class they represent and no member of the class receives any benefit from the expenditure the appellee is violating the constitutional rights of that class.
The trial judge made the following findings of fact.
"1. The Dade County Fire Department was created in 1939 pursuant to the provisions of a state statute, Chapter 19759, Special Acts of 1939, which specifically authorized its creation by the Board of County Commissioners of Dade County. In addition, Section 1.01(A) (4) of the Dade County Home Rule Charter empowers the Board of County Commissioners of Dade County to `provide central records, training, and communications for fire * * * protection; * * * provide fire stations, jails and related facilities; and subject to Section 1.01(A) (18) provide a uniform system of fire and police protection.' The last section referred to, Section 1.01(A) (18), grants the Board of County Commissioners of Dade County the power to `set reasonable minimum standards for all governmental units in the county for the performance of any service or function'; this provision appears to be an authorization to the Board of County Commissioners to establish those minimum standards for fire protection services that must be maintained by each governmental unit in the County, including all municipalities with fire departments. Pursuant to these Charter provisions the Board of County Commissioners has enacted various County ordinances relating to the provision of fire protection standards applicable throughout the County; the more significant of these are Ordinance No. 66-37 enacted on September 7, 1966, and Ordinance No. 66-31 enacted on July 26, 1966. The last named ordinance adopted a comprehensive Minimum Standards Fire Prevention and Safety Code for both the incorporated and unincorporated areas of Dade County. The Court also noted various applicable provisions *718 of the Code of Metropolitan Dade County, including those set out in Chapters 2 and 14 of that Code.

* * * * * *
"3. During recent years and at the present time, the County Fire Department concentrates its manpower and equipment in those areas of the County where the need for its services is greater. The need is obviously greater in those lesser developed areas lacking the substantial facilities available in the more highly developed urban areas where excellent municipal fire departments are functioning. Nevertheless, the County Fire Department is given authority to provide fire protection services throughout the County by virtue of the aforementioned 1939 statute and Section 1.01(A) (4) of the Metropolitan Charter. However, the Court recognizes that the County Fire Department offers substantially less protection in those municipalities where municipal fire departments provide a high level of service, and significantly greater protection in those unincorporated areas and municipalities which are wholly dependent on the County for fire protection.
"4. * * * A minor but very significant portion of the County's fire protection budget is expended on certain county-wide services provided to municipalities with organized fire departments and to all other governmental entities within the County. These county-wide services include the following:
a. Coordination of emergency operations, planning and training for natural disasters and Civil Defense emergencies.
b. Coordination and dispatching for the Dade County Fire Service Mutual Air Organization.
c. Providing central fire alarm dispatching and communications services for [several] municipal fire departments (North Miami, North Miami Beach, Opa Locka, Bal Harbor, Bay Harbor Islands, Surfside, Sweetwater, Florida City, South Miami, Biscayne Park) as well as communications and liaison between the municipalities and the Florida Forest Service, Everglades Fire Control District, the Everglades National Park, the Homestead Air Force Base Fire Department and the Miami International Airport.
d. Providing basic and advanced fire and rescue training in coordination with the Board of Public Instruction and Miami-Dade Junior College in order to offer an overall fire protection and rescue training program.
e. Providing fire prevention and safety inspections, investigations and enforcement actions upon request of any municipality.
f. Providing licenses, permits and inspections for the safety regulations of commercial explosives and fireworks in all jurisdictions throughout Dade County.
g. Maintaining a central fire records and reporting system.
h. Providing special supporting services to fire and police upon request from any municipality or other governmental entity. These services include the furnishing of portable electric generators, lights, ventilators, power tools, air compressors and entry tools, gas masks, self-contained breathing apparatus and protective gear, all types of foam extinguishing agents and applicators for special purposes beyond normal or routine firefighting equipment and agents.
i. Providing emergency repairs and maintenance of fire hydrants and adaptors for use in inter-agency operations. This includes fire hose and hydrant thread adaptors to enable the various municipal fire departments to work together and jointly on occasions where this is required.
* * * * * *
"7. The County Fire Department appears to be ready, willing and able on reasonable *719 notice to perform any services in the field of fire protection which municipalities, or any of them, wish the County to perform. The County has for many years taken full responsibility for providing the fire protection service in [the municipalities of] Golden Beach, El Portal, Hialeah Gardens, Virginia Gardens and Pensuco. Within the course of the past 18 months the cities of South Miami and Biscayne Park, beset with financial difficulties arising from ad valorem millage restrictions imposed on municipalities by state law, have requested the County to assume full responsibility for providing fire protection within them. In both instances the County has honored the requests made and provided the protection sought. This is not to say that the County can produce fire protection services in all municipalities instantaneously and at the same level that those services have been provided in the past; it does mean however that the County appears prepared and willing to undertake full or partial responsibility for any area of fire protection services presently offered by individual municipalities. The plaintiffs have not offered a single instance where a municipality has requested total or partial fire protection from the County and been refused."
From the foregoing findings, the trial judge arrived at the following conclusions of law which we adopt as our decision on this appeal:

* * * * * *
"a. It is apparent to the Court that County taxpayers whose property is situated in municipalities with excellent city fire departments and high standards of municipal fire protection are receiving substantially lesser benefits from the County Fire Department than are persons who reside in the unincorporated areas of the County or in municipalities without municipal fire departments. This is because the County Fire Department tends to concentrate its personnel, services and facilities more heavily in those sections of the County where there are no municipal fire departments and where, as a result, there is greater need for County fire protection. There is therefore an inequality in the benefits received from the County's fire protection services which the plaintiffs (whose municipal properties are assessed for County tax purposes) maintain to be illegal.
"In the Court's view this situation is akin to that in which ad valorem taxes are imposed and collected for the public school system. Persons owning substantial properties and paying heavy ad valorem taxes but having no children entered in the public school system may contend they are taxed without benefit or, alternatively, that the tax they pay is disproportionate to the benefit they receive; however, they have for many years been adjudged to have no cause of action. This principle was firmly stated by the Supreme Court of Florida in Malounek v. Highfill (1930) 100 Fla. 1428, 131 So. 313 in these terms:
`The burden of education, as provided in the free schools of the state should fall alike on all taxpayers. Every citizen has a direct interest in the education of the youth of the community, in that education upbuilds and promotes good citizenship, and, although a taxpayer may not have contributed a child, or children, to the citizenship of the community, he must contribute to the cause of education which will make for the betterment of the citizenship. This contribution is one to his country and not to the individual who derives some direct and personal benefit from it.'
"In 193[7] the United States Supreme Court strongly endorsed these legal principles in Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 57 Sup.Ct. 868, 81 L.Ed. 1245, 109 A.L.R. 1327. The Court's opinion held:
`Nothing is more familiar in taxation than the imposition of a tax upon a class or upon individuals who enjoy no direct benefit from its expenditures, and who *720 are not responsible for the condition to be remedied.
`A tax is not an assessment of benefits. It is, as we have said, a means of distributing the burden of the cost of government. The only benefit to which the taxpayer is constitutionally entitled is that derived from his enjoyment of the privileges of living in an organized society, established and safeguarded by the devotion of taxes to public purposes. See Cincinnati Soap Co. v. United States, [301] U.S. [308], 81 L.Ed. (Adv. 707), 57 S.Ct. 764, supra. Any other view would preclude the levying of taxes except as they are used to compensate for the burden on those who pay them, and would involve the abandonment of the most fundamental principle of government that it exists primarily to provide for the common good. A corporation cannot object to the use of the taxes which it pays for the maintenance of schools because it has no children. Thomas v. Gay, 169 U.S. 264, 280, 42 L.Ed. 740, 746, 18 S.Ct. 340. This Court has repudiated the suggestion, whenever made, that the Constitution requires the benefits derived from the expenditure of public moneys to be apportioned to the burdens of the taxpayer, or that he can resist the payment of the tax because it is not expended for purposes which are peculiarly beneficial to him. [301 U.S. at 521-523, 57 S.Ct. 868.]
* * * * * *
`It is irrelevant to the permissible exercise of the power to tax that some pay the tax who have not occasioned its expenditure, or that in the course of the use of its proceeds for a public purpose the legislature has benefitted individuals, who may or may not be related to those who are taxed.' [301 U.S. at 525, 57 S.Ct. 868]
"Since the prevention and control of fire in all parts of the County serves the general good and is a community or governmental purpose, and consistent with the concept of public health, welfare and safety, the Court deems the County's method of taxing all property in the County on an ad valorem basis for the general community benefit to be valid, even if a greater portion of the benefits inure to residents of the unincorporated areas and certain municipalities. The legal principles upon which the Court bases its decision are also stated in 23 Florida Law and Practice, Taxation, Section 42; 51 American Jurisprudence, Taxation, Section 332; Hunter v. Owens, (1920) 86 So. 839, 80 Fla. 812; and Lott v. City of Orlando, (1940) [142 Fla. 338], 196 So. 313.
b. There is nothing to indicate that the County arbitrarily or unreasonably discriminates against municipalities and in favor of the unincorporated areas of the County when providing fire protection service. The County appears to concentrate its fire fighting facilities in those areas where the need is greatest, which in virtually all cases also happens to be the areas not serviced by municipal fire departments. However, such differentiation as is shown is neither unreasonable nor capricious because it is based wholly on need for facilities. The fact that the County offers those municipalities which do not have municipal fire departments the same level of service as is given the unincorporated areas demonstrates rather conclusively that there is no arbitrary discrimination practiced against municipalities per se. The fact that the County also offered a level of fire protection services equivalent to those offered in the unincorporated areas to those two cities which recently abolished their municipal fire departments for financial reasons is a further and striking demonstration of the non-discriminatory aspects of the County's policy of providing facilities where the need is greatest.
c. The Court attaches considerable significance to the County's apparent willingness to provide fire protection services, wholly or partially, to any municipality that wishes them. This is comparable to the situation where a taxpayer who enrolls his *721 child in a private or parochial school changes his mind and decides to send the child to a public school. Were the public school to then refuse the child, the taxpayer parent would have a legitimate grievance and a sound cause of action. The public school must stand ready, willing and able to accept the child who is enrolled in a private school just as the County Fire Department must stand ready, willing and able to provide fire protection services at the level required by the Minimum Standards Fire Prevention and Safety Code or at the level prevailing in the unincorporated areas, whichever is the higher. Since the County has met this test twice during the past 18 months, this Court cannot properly declare its method of taxation and expenditure for County provided fire protection to be unlawful or invalid."
Affirmed.
NOTES
[1] * * *

"3. That this Court will advocate, declare and decree that the Defendant is without lawful authority to collect taxes in any city in Dade County for fire protection where such city has and furnishes its own fire protection.
"4. That this Court will declare and decree that the Defendant shall segregate and keep separate and unexpended, any and all amounts derived from such city properties for fire protection and return these amounts to the several taxpayers, less and discharged of reasonable costs and expenses in connection therewith, to be fixed by a Special Order of this Court.
"5. That the Court will grant immediate relief in the premises, by appropriate preliminary Injunctive Order, without notice, for the purpose of maintaining the status quo; that is to say, by enjoining and restraining Dade County from attempting to defeat the rights of these Plaintiffs and all others similarly situated.
"6. That this Court, by appropriate Order, will decree and enforce the rights of these Plaintiffs and all others similarly situated, under and by virtue of the Constitutions of the State of Florida and the United States of America, and under the Metropolitan Home Rule Charter, and particularly, Section 1.01, subsection 11 thereof.
"7. That this Court will grant such other and further relief as this Court may deem fair and just."