333 So.2d 457 (1976)
William J. ALSDORF et al., Appellants,
v.
BROWARD COUNTY, a Political Subdivision of the State of Florida, Appellee.
No. 47566.
Supreme Court of Florida.
May 5, 1976.
Rehearing Denied July 7, 1976.
C. Lavon Ward, Fort Lauderdale, for appellants.
Betty Lynn Lee, Gen. Counsel, and John Ruff, Asst. Gen. Counsel, Fort Lauderdale, for appellee.
ENGLAND, Justice.
This matter was brought to us by direct appeal from a final judgment rendered by the Broward County Circuit Court, construing Article VIII, Section 1 (h) of the 1968 Florida Constitution as being inherently too vague to be self-executing. We have jurisdiction to review that judgment under Article V, Section 3(b)(1) of the Florida Constitution.
This lawsuit began as a class action by twenty-four mayors of Florida municipalities, in their governmental capacities and as citizen-taxpayers, seeking declaratory and other forms of relief against Broward County in connection with the County's *458 1973-74 budget.[1] The mayors' lawsuit challenges Broward County's expenditure of various sums raised by property tax levies from residents within municipal boundaries, in the light of Article VIII, Section 1(h) of the Florida Constitution, which provides:
"(h) Taxes; limitation. Property situate within municipalities shall not be subject to taxation for services rendered by the county exclusively for the benefit of the property or residents in unincorporated areas."
Following a four day non-jury trial, the trial court entered final judgment against the mayors and dismissed their lawsuit, finding
"... that Article VIII, Sec. 1(h) of the Florida Constitution (1968), is too vague by itself to be workable. There are no standards, no guidelines by which to aide the municipalities and counties in their attempt to work within the Constitutional provision. This Court feels that it is the legislature's duty to supply the necessary standards so as to make the provision workable."
The mayors attack that judgment here.[2]
We previously construed the language of this constitutional provision in City of St. Petersburg v. Briley, Wild & Assocs., Inc., 239 So.2d 817 (Fla. 1970). In that case we held that the term "exclusively" could not be read literally, and that county taxation of municipal properties is barred only when county services bring to municipal property owners no "real or substantial benefit". We there held, on the facts of that case, that tax-supported expenditures for a county sewage treatment plant benefited the residents of intra-county municipalities by preserving their health, even though no lines, mains, pumping stations or other physical facilities were constructed within city boundaries.[3]
Other Florida appellate decisions have upheld the use of city-derived property tax revenues for a county fire department,[4] for county sewer facilities,[5] and for county roads, canals and related improvements.[6]
Unlike previous litigants who have challenged individual county expenditures, the mayors in this lawsuit challenge an array of county expenditures, asserting that each provides no "real and substantial benefit" to city dwellers within the county.[7] The trial court analyzed these assertions and found from the evidence adduced at trial that, while "some of the items listed in the plaintiffs' lawsuit clearly benefit all citizens of the County ... numerous other items benefit only the residents of the unincorporated areas and, therefore, must necessarily come within the purview of this *459 lawsuit." Nonetheless, the court dismissed the mayors' lawsuit on the ground that legislative guidelines were needed to make the constitutional provision work. We disagree.
Both appellant and appellee support their positions here with our decision in Gray v. Bryant, 125 So.2d 846 (Fla. 1960). Appellant cites several portions of that decision for support and points out that the constitutional provision at issue there was held to require no legislative implementation for its effectiveness. Appellee finds support for its position in the Court's language on page 851, to the effect that:
"The basic guide, or test, in determining whether a constitutional provision should be construed to be self-executing, or not self-executing, is whether or not the provision lays down a sufficient rule by means of which the right or purpose which it gives or is intended to accomplish may be determined, enjoyed, or protected without the aid of legislative enactment."
From this appellee argues that the complexity of financing, budgeting and conducting a variety of necessary governmental activities in a county which contains multiple municipalities, coupled with the ever present factual uncertainty of what is and what is not of "real and substantial benefit" to particular municipal residents, requires an affirmation of the trial court's conclusion.
We recognize the logic of appellee's argument. We concede, in fact, that the practical consequences of holding for the mayors may pose such horrendous fiscal problems for the administration of 67 counties that their governmental operations may be virtually incapacitated by uncertainty and lawsuits. If there were any practical way to avoid that result consistent with the Constitution, we would readily adopt it. But neither party here has offered such a solution, and we can conceive of none.[8] We simply cannot abdicate our responsibility to follow the will of the people as expressed in the Constitution, on the grounds of administrative complexity.
The mandate against city taxation for exclusive county activities is absolute and unequivocal. The people appear to have directed this consequence despite the fact that extensive judicial labor is required to separate the permissible from the impermissible. Indeed, we fail to see any way in which legislative intervention would lessen that labor.[9]
Our view of the self-executing nature of this constitutional position has three bases.
(1) The language of the Constitution is reasonably straightforward and unambiguous. The intent of this tax limitation provision is both obvious and understandable.[10] Practical considerations aside, there is no reason that the words cannot be applied to mean precisely what they say (with the gloss previously given the term "exclusively" in Briley).
(2) The format of the particular provision is not unique to our Constitution. The identical mandatory negative "shall not" or its equivalent appears in numerous other provisions as a direct check on governmental *460 and nongovernmental acts, some of which also bar ad valorem taxation on various subjects.[11] We are not willing to lessen the negative directive in this provision in light of the implications which that action could have in other areas.
(3) The trial court found as a fact that several of the county expenditures enumerated in the mayors' complaint are of no real or substantial benefit to municipal residents.[12] Neither party has challenged the trial court's findings as being without factual support in the record. This appears to prove appellants' point that the Constitution can operate without legislative clarification.
We conclude, therefore, that Article VIII, Section 1(h) of the Florida Constitution is self-executing, and that with or without legislative interpretation the courts will be required to draw the lines between acceptable and prohibited municipal taxation.[13] We must, therefore, reverse the trial court's decision and remand this proceeding for further action by the trial court in light of our opinion.
We recognize, however, that the fiscal effect of our decision may significantly affect Broward County and that neither it nor the Legislature has provided revenue for this eventuality. Under these circumstances, we direct the trial court to exercise its inherent equitable powers to fashion a suitable remedy for the resolution of this controversy.
"In a changing world marked by the ebb and flow of social and economic shifts, new conditions constantly arise which make it necessary, that no right be without a remedy, to extend the old and tried remedies. It is the function *461 of courts to do this. It may be done by working old fields, but, when it becomes necessary, they should not hesitate to `break new ground' to do so."[14]
The parties may be able to agree among themselves on an arrangement which recognizes the rights of municipal taxpayers and the obligations incurred by county government. If such a settlement is now possible, the courts should not intervene. Otherwise, the plaintiffs are entitled to remedial orders which take into account the equities on both sides.
The decision of the circuit court is reversed and this case is remanded for further action consistent with this opinion.
OVERTON, C.J., and ADKINS, SUNDBERG and HATCHETT, JJ., concur.
BOYD, J., dissents with an opinion.
ROBERTS, J., dissents and concurs with BOYD, J.
BOYD, Justice (dissenting).
I respectfully dissent to the majority opinion.
This Court should be fully aware that Broward is one of Florida's largest and perhaps the fastest growing counties in the Nation. It has many municipalities and unincorporated areas which appear to be the same with no major differences in public services offered in such areas. To require the County to separate tax dollars expended based upon municipal boundaries imposes an unrealistic and impossible task.
As we stated in City of St. Petersburg v. Briley, Wild and Associates, 239 So.2d 817 (Fla. 1970), and Burke v. Charlotte Co., 286 So.2d 199 (Fla. 1973), there is no requirement that funds expended by counties outside of municipalities be "direct and primary," but "real and substantial" to the benefit of municipal residents. It is hard to imagine any expenditure which could be made in populous Broward County which could benefit only persons in the unincorporated areas without real and substantial benefits to at least some of those residents of incorporated areas.
Such a division stated in the constitutional provision construed by the majority opinion could only be accomplished in those rural areas of the state having small municipalities wherein the services furnished in the towns or cities can be clearly identified as separate in nature from rural benefits provided for agricultural and similar purposes.
I would adopt the trial court's judgment except that I would hold that under Gray v. Bryant, 125 So.2d 846 (Fla. 1960), the constitutional provision is self-executing in rural or semi-rural areas in which municipal limits clearly distinguish between city and rural areas. The separation of tax dollars as stated in the Constitution can not be accomplished in the vast metropolitan complex of Broward County.
ROBERTS, J., concurs.
NOTES
[1] Twenty-two of the original plaintiffs were dismissed from the lawsuit before this appeal was taken.
[2] Appellants also argue that the trial court should be compelled to pass on appellee's city-county allocation of budgeted funds under Section 129.01(2)(b), Fla. Stat. (1975), and to order a refund of illegally assessed taxes. In our view of the case, it is not necessary to reach either of these issues.
[3] The Court also suggested, although it was not germane to the controversy, that county parks, libraries, and perhaps even fire-fighting equipment, might be services for which the county could not tax municipal properties.
[4] Dressel v. Dade County, 219 So.2d 716 (3d DCA Fla. 1969) (decided without reference to Article VIII, Section 1(h) of the Constitution).
[5] City of Waldo v. Alachua County, 249 So.2d 419 (Fla. 1971), (decided without reference to Article VIII, Section 1(h) of the Constitution).
[6] Burke v. Charlotte County, 286 So.2d 199 (Fla. 1973).
[7] Plaintiffs' complaint has challenged 34 separate county activities, constituting over one-third of the county's budgeted activities. These include funding of the county commission, the county attorney, the county auditor, the county comptroller, and the county's data processing, personnel, purchasing, planning, development, engineering, mosquito control and water management departments. After trial, the primary county activity at issue was the county sheriff's road patrol.
[8] It has been suggested that we recede from Briley by adopting a literal view of "exclusively", and by so doing leave the area for operation of this provision so narrow as to be inconsequential and unenforceable. Tempting as this appears, this solution merely offers an absurd result in place of an impractical one. 239 So.2d at 822.
[9] If the Legislature attempted to enumerate county services within or without the constitutional ban (it doesn't matter which), we would still be obliged to entertain and ultimately rule on challenges to individual service items.
[10] A fair portrayal of the history of the concerns which led to the adoption of this provision, and the related governmental attempts to deal with those concerns which have evolved after it became effective, is set forth in January 1976 issue of the Florida Municipal Record, an official publication of the Florida League of Cities.
[11] See, for example, Article I, Sections 3 ("There shall be no law respecting the establishment of religion... ."), 4 ("No law shall be passed to restrain or abridge the liberty of speech or of the press."), 6 ("The right of employees ... to bargain collectively shall not be denied or abridged.") and 10 ("No bill of attainder, ex post facto law or law impairing the obligation of contracts shall be passed."); Article VII, Sections 1(b) ("Motor vehicles, boats [etc] ... shall not be subject to ad valorem taxes.") and 9 (b) ("Ad valorem taxes ... shall not be levied in excess of the following millages... ."); Article VIII, Section 3 ("Consolidation shall not extend the territorial scope of taxation for the payment of pre-existing debt... ."); Article X, Sections 1 ("The legislature shall not take action on any proposed amendment to the constitution of the United States unless a majority of the members thereof have been elected after the proposed amendment has been submitted for ratification."), 4(c) ("The homestead shall not be subject to devise if the owner is survived by spouse or minor child... ."), and 9 ("Repeal or amendment of a criminal statute shall not affect prosecution or punishment for any crime previously committed."). Cf., Dade County Classroom Teachers Ass'n, Inc. v. Florida Legislature, 269 So.2d 684 (Fla. 1972).
[12] The trial court identified four categories of services and facilities in Broward County, listing some items believed to be within each category. One category involves items from which all cities receive benefits all of the time, such as the county commission. Another involves items from which all cities receive benefits some of the time, such as the sheriff's office and the personnel office. Items in these categories were found to be properly taxable to city residents. As to the necessary extent of real and substantial benefit, see Dressel v. Dade County, 219 So.2d 716 (3d DCA Fla. 1969). Another category involves items from which some but not all municipalities benefit, such as emergency medical services available only in West Broward County and the county library. Items in this category would require an identification and allocation of revenues and expenditures. The last category involves items from which no city benefits, such as the building and zoning department.
[13] Appellee suggests that the likely result of holding as we do will be (1) consolidation of cities and counties, (2) abolition of cities, (3) proliferation of special tax districts, or (4) expanded user fees. That assertion may be correct. See Gallant v. Stephens, Case No. 75-8681, Sixth Jud.Cir. Court (12/19/75), holding that a county commission may constitute all unincorporated areas as a special tax unit for ad valorem taxes without a referendum.
[14] State ex rel. Watkins v. Fernandez, 106 Fla. 779, 143 So. 638, 641 (1932).