Mr. J. Bert Grandoff County Attorney County of Hillsborough
QUESTIONS:
1. Is the constitutional provision found in s. 6(e), Art. VIII, State Const., which allows Hillsborough County to establish a consolidated chartered form of government, the exclusive method by which Hillsborough County may adopt a chartered form of government, or in the alternative, may Hillsborough County properly act under s. 1(c), Art. VIII, State Const.?
2. If Hillsborough County enacts a charter under s. 1(c), Art. VIII, State Const., may its governing body have the power to supersede or alter special acts relating to Hillsborough County which have not been approved by referendum, especially those special acts which affect the incorporated as well as the unincorporated areas of Hillsborough County?
3. May a chartered form of government be validly established under part IV of ch. 125, F.S., if the constitutional officers of tax collector, property appraiser, supervisor of elections, clerk of circuit court, and sheriff were not included as chartered offices, but retain their status as if a charter had not been adopted?
4. May a county charter validly require that the salaries of county officers be provided by ordinance as mandated by s.125.83(4), F.S.?
5. Must the executive responsibilities and the legislative responsibilities as set out in ss. 125.85 and 125.86, F.S., be included in the proposed Hillsborough County charter verbatim, or may they be altered or adjusted to accommodate, amplify or facilitate the particular optional form of government chosen?
 2. If Hillsborough County adopts a charter form of county government under s. 1(c), Art. VIII, State Const., its governing body will possess no constitutional authority to amend or repeal or supersede or alter by county ordinance any existing and effective special law relating to the county and/or the incorporated areas therein, except for those local and special laws relating only to the unincorporated area of the county in force and effect on the effective date of Art. VIII, State Const. 1968, which, pursuant to s. 6(d), Art. VIII, may be amended or repealed by county ordinance.
 3. A chartered form of county government may be validly established for Hillsborough County under s. 1(c), Art. VIII, State Const., and part IV of ch. 125, F.S., if the constitutional officers denominated in s. 1(d), Art. VIII, are not included as charter officers but retain their present status as constitutional officers. The Constitution does not require such constitutional officers to be intrinsically included in a county home rule charter as charter officers or to be designated as such therein.
 4. Pursuant to the mandate of s. 5(c), Art. II, State Const., s. 125.83(4), F.S., probably cannot constitutionally prescribe or require that a county home rule charter provide that the salaries of all county officers be provided by ordinance, or constitutionally delegate to the governing body of a home rule charter county the power to fix by ordinance the compensation or salaries of all county officers.
 5. The general executive and legislative responsibilities, functions, powers and duties prescribed by ss. 125.85 and 125.86, F.S., must be included in and defined by a county home rule charter adopted under part IV of ch. 125, F.S., and no alteration of or deviation from the same may be made in formulating and adopting such county home rule charter; no provision in the charter for either optional form of county government may be inconsistent with or contravene any provision for or limitations on optional county charters prescribed in part IV of ch. 125, F.S.
SUMMARY.
Unless and until judicially determined otherwise:
 1. Section 6(e), Art. VIII, State Const., does not provide the exclusive method by which Hillsborough County may adopt a chartered form of government, and the county may opt to proceed to adopt a county home rule charter or a charter form of county government pursuant to s. 1(c), Art. VIII, State Const. 1968, as implemented by part II or part IV of ch. 125, F.S.
AS TO QUESTION 1:
There are two constitutional provisions under which Hillsborough County may establish a chartered form of government: s. 1(c), Art. VIII (county government established by charter), and s. 6(e) (chartered form of consolidated government), State Const. 1968. I find nothing in the Constitution that would make the provisions of s. 6(e), Art. VIII, State Const. (s. 24, Art. VIII, State Const. 1885, as amended), the exclusive method by which Hillsborough County may adopt a chartered form of government; thus Hillsborough County may properly act to adopt a county home rule charter under s. 1(c), Art. VIII, or it may adopt a chartered form of consolidated government under s. 6(e), Art. VIII, preserving s. 24, Art. VIII, State Const. 1885, as amended. Cf. s. 3, Art. VIII, State Const. 1968, providing for consolidated governments which may be proposed only by special law.
Section 6(e), Art. VIII, State Const. 1968, as amended, provides,inter alia, that s. 24, Art. VIII, State Const. 1885, as amended, `shall remain in full force and effect as to [Hillsborough County], as if this article [Art. VIII of the 1968 Constitution] had not been adopted, until [the] county shall expressly adopt a charter or home rule plan pursuant to this article [Art. VIII of the 1968 Constitution].' (Emphasis supplied.) Section 6(e) does not in terms purport to establish the exclusive method by which the county may adopt a charter establishing county government. Cf. s. 6(g), Art. VIII, State Const. 1968, as amended, which states that the `legislature shall have power, by joint resolution, to delete from this article any subsection of this Section 6 . . . when all events to which the subsection to be deleted is or could become applicable have occurred.' To adopt a chartered form ofconsolidated government, as distinguished from a consolidation plan proposed by special law (see s. 3, Art. VIII, State Const. 1968), the county must comply with s. 24, Art. VIII, State Const. 1885, as amended, as incorporated in or preserved by s. 6(e), Art. VIII, State Const. 1968, as amended, and the charter commission to effectuate the provisions of s. 24, Art. VIII, State Const. 1885, must be established or continued by the State Legislature.
The provisions of s. 24, Art. VIII, State Const. 1885, as preserved by s. 6(e), Art. VIII, State Const. 1968, are kept alive or remain in force and effect only until such time as the county has expressly adopted a charter establishing a county government
which, except for the consolidation plan of county and municipal government provided for in s. 3, Art. VIII, State Const. 1968, is the only form of county government or county home rule charter provided for in Art. VIII, State Const. 1968. Upon the adoption of any such home rule charter by Hillsborough County, the provisions of s. 24, Art. VIII, State Const. 1885, expire. See the commentary on s. 1, Art. VIII, at p. 271, volume 26A, F.S.A. Thus, s. 6(e), Art. VIII, State Const. 1968, clearly comprehends or implies an option to proceed under either s. 1(c), Art. VIII, State Const. 1968, or s. 24, Art. VIII, State Const. 1885, as preserved and continued in effect by s. 6(e), Art. VIII, State Const. 1968.
Therefore, until and unless judicially determined otherwise, I conclude that s. 6(e), Art. VIII, State Const. 1968, does not provide the exclusive method by which Hillsborough County may adopt a chartered form of government, and the county may opt to proceed to adopt a county home rule charter or a chater form of county government pursuant to s. 1(c), Art. VIII, State Const. 1968, as implemented by part II or part IV of ch. 125, F.S.
AS TO QUESTION 2:
While s. 1(c), Art. VIII, State Const. 1968, as amended, authorizes a county government to be established by charter pursuant to general law, neither s. 1(c) nor the implemental legislation, parts II and IV of ch. 125, F.S., empowers a charter form of county government to amend or repeal any statute theretofore enacted by the State Legislature. The expressed condition on the amendment or repeal of a charter once adopted is a limitation on the legislative power of the state. A discriminating analysis of the provisions of s. 1(g), Art. VIII, discloses no explicit grant of power to a charter county's governing body to amend or repeal a statute by ordinance. The reference in s. 1(g) to a `special law approved by vote of the electors' would seem to concern those special laws adopting or amending or adding powers or limitations to county charters, which organic documents contain and prescribe the powers, or limitations on powers, of charter counties. See Commentary on s. 1, Art. VIII, at p. 271, volume 26A, F.S.A. Cf. s. 11(a)(1), Art. III, State Const. 1968, relating to special laws pertaining to the election, jurisdiction or duties of officers of chartered counties; and Cross Key Waterways v. Askew, 351 So.2d 1062, 1065, footnote 7 (1 D.C.A. Fla., 1977), affirmed, 372 So.2d 913 (Fla. 1978). The power to amend or repeal the statutory law is a legislative power belonging to the state which is, by the terms of s. 1, Art. III, State Const., vested in the State Legislature. Cf. AGO 075-260, concluding that the Volusia County charter may be repealed only by action initiated by the Legislature itself (approved by vote of electors) and not by the initiative and referendum process prescribed in the charter for amendments thereto. In the absence of some express constitutional authority therefor, it would seem axiomatic that existing statutes may be amended or repealed only by another statute enacted by the State Legislature. See Ch. 71-29, Laws of Florida, which repealed numerous general laws of local application affecting the several counties and converted the same to ordinances, subject to modification or repeal as are other ordinances. The legislative or quasi-legislative power delegated by s. 1(g), Art. VIII, to enact ordinances not inconsistent with general law (to conduct county government) does not carry with it the concomitant authority to enact ordinances amending or repealing extant statutes or any part or parts thereof. The power granted to provide by charter for the precedence of county ordinances over municipal ordinances does not include the power to provide by charter for the precedence of county ordinances over laws enacted by the State Legislature, or delegate any part of the legislative power of the state to a county to enable it to enact or amend or repeal the laws of the state; nor does the implemental legislation, parts II and IV of ch. 125, F.S. The only constitutional authority for a county, charter or noncharter, to amend or repeal a law enacted by the State Legislature appears to be that contained in s. 6(d), Art. VIII, State Const., which reads:
 Local laws relating only to unincorporated areas of a county on the effective *3693 date of this article may be amended or repealed by county ordinance.
Section 6(d), Art. VIII, State Const., neither defines `local laws' nor differentiates charter counties from noncharter counties. Section 12(g), Art. X, State Const., defines the term `special law' to mean a special or local law, and it has been stated that at least one definition of a local law is a `special law.' Davis v. Gronemeyer, 251 So.2d 1, 4 (Fla. 1971). The terms `county' or `counties' are used throughout the Constitution without distinction and both apply to or refer to charter and noncharter counties alike and the officers thereof. See, e.g., s. 5, Art. II; s. 1(f), Art. IV; s. 7, Art. IV; ss. 8, 9, 10 and 12, Art. VII; and ss. 1(a), 1(h), 1(i), 1(j), 1(k), 4, 5, Art. VIII, State Const. As observed by the Supreme Court of Florida in Sarasota County v. Town of Longboat Key, 355 So.2d 1197, 1201
(Fla. 1978), `[w]here there has been an intent to distinguish the two forms of county government [in the State Constitution], it has been done explicitly.' For example, see, s. 11(a)(1), Art. III; ss. 1(d), 1(e), 1(f), 1(g), Art. VIII; see also State ex rel. Dade County v. Dickinson, 230 So.2d 130, 137 (Fla. 1969), holding that the constitutional limitations contained in s. 9(b), Art. VII, apply to `home rule and consolidated governments as well as traditional counties and municipalities'; Davis v. Gronemeyer,supra, at 5, holding that noncharter counties have home rule power only to the limited extent provided by s. 6(d), Art. VIII, the clear implication of which is that the provisions of s. 6(d), Art. VIII apply to charter as well as noncharter counties; In re Advisory Opinion to the Governor, 313 So.2d 717 (Fla. 1975), applying the provisions of s. 1(f), Art. IV, State Const., referring to `any vacancy in state or county office,' to a charter county; Alsdorf v. Broward County, 333 So.2d 457 (Fla. 1976), applying the provisions of s. 1(h), Art. VIII, State Const., with reference to a `county' to a charter county; and cf. In re West Water Management District, 269 So.2d 405 (2 D.C.A. Fla., 1972), applying the provisions of present s. 125.01(1)(j), F.S., to a charter county and, by way of dicta, the provisions of present s.125.01(1)(q), F.S.; City of Ormond Beach v. County of Volusia,383 So.2d 671, 673 (5 D.C.A. Fla., 1980), stating a charter county is authorized by s. 1(g), Art. VIII, State Const., and s.125.01(1)(f), F.S., to operate a library system; and State ex rel. Volusia County v. Dickinson, 269 So.2d 9 (Fla. 1972), reading s. 9(a), Art. VII, referring to `counties,' and s. 1(g), Art. VIII, referring to charter counties, together and applying the same to a charter county for purposes of the cigarette tax.
The inquiry and supplemental materials furnished to this office suggest that s. 1(g), Art. VIII, State Const., controls this question. Sarasota County v. Town of Longboat Key, 355 So.2d 1197
(Fla. 1978), seems to militate against this notion. In any event, it is beyond the powers of this office to conclusively determine such constitutional, jurisdictional questions. In Sarasota County v. Town of Longboat Key, supra, the county contended that charter counties were excluded from the transfer of powers provisions of s. 4, Art. VIII, State Const. (referring in material part to `a county') by reason of s. 1(g), Art. VIII, or alternately that the transfer requirements of s. 4, Art. VIII, were met by s.125.86(7), F.S., which vests the board of county commissioners with the power to:
 Adopt, pursuant to the provisions of the charter, such ordinances of countywide force and effect as are necessary for the health, safety, and welfare of the residents. It is the specific legislative intent to recognize that a county charter may properly determine that certain governmental areas are more conducive to uniform countywide enforcement and may provide the county government powers in relation to those areas as recognized and as may be amended from time to time by the people of that county;
and suggested that because it operated under a charter form of government, s. 1(g), Art. VIII alone governed its powers. The Supreme Court disagreed and held that s. 4, Art. VIII applies both to charter and noncharter counties. On the county's assertion that s. 4, Art. VIII contemplated a general law such as s. 125.86(7), F.S., by which counties might accomplish a transfer of municipal functions by county resolution, the court held that the `by law' reference in s. 4, Art. VIII, connotes the need for a separate legislative act or statute addressed to a specific transfer of a function or power and that s. 125.86(7), F.S., `does no more than provide general authority for county commissions to exercise police powers.' Analogously, the provisions of s. 6(d), Art. VIII, referring to `a county' without distinction, would appear to apply both to charter and noncharter counties and operate to prohibit a chartered form of county government from amending or repealing, or, as stated in your question, superseding or altering, by county ordinance existing special laws relating to a county which affect the incorporated areas as well as the unincorporated areas of the county. Just as the Supreme Court in Sarasota County v. Town of Longboat Key, supra, was `reluctant to elevate the general provisions of Article VIII, Section 1(g) to a dominant position over the specific provisions of Article VIII, Section 4,' this office, even if possessing the authority so to do, would be reluctant to and could not justify raising the general provisions of ss. 1(c), 1(g), Art. VIII, and the implemental legislation, parts II and IV of ch. 125, F.S., to a position of supremacy over s. 6(d), Art. VIII.
Therefore, until judicially determined otherwise, I conclude that if Hillsborough County adopts a charter form of county government under s. 1(c), Art. VIII, State Const., its governing body will possess no constitutional authority to amend or repeal or supersede or alter by county ordinance any existing and effective special law relating to the county and the incorporated areas therein, except for those local and special laws relating only to the unincorporated area of the county in force and effect on the effective date of Art. VIII which, pursuant to s. 6(d), Art. VIII, may be amended or repealed by county ordinance.
AS TO QUESTION 3:
This question arises under part IV of ch. 125 (ss. 125.80-125.88), F.S., and questions whether the prescribed chartered form of county government may be validly established if the constitutional county officers are not made charter officers but retain their present status.
Part IV of ch. 125, F.S., does not make any provisions for or require that these constitutional officers be made charter officers or that the designated offices be abolished and the duties thereof transferred to another (charter created) office. Neither does part II of ch. 125, F.S., which part IV supplements and provides for an alternative way for the adoption of a county charter. This question is controlled by s. 1(d), Art. VIII, State Const. 1968.
Section 1(d), Art. VIII, State Const., plainly provides that the designated county officers shall be elected by the electors of the county, `except, when provided by county charter . . . any county officer may be chosen in another manner therein specified, or any
county office may be abolished when all the duties of the office prescribed by general law are transferred to another office.' (Emphasis supplied.) Unless otherwise provided by the county charter, the clerk of the circuit court shall be the ex officio clerk of the board of county commissioners, auditor, recorder and custodian of all county funds. See also s. 16, Art. V, State Const. While s. 1(d), Art. VIII provides for an alternative procedure for choosing or selecting these county officers or for the abolition of any of the designated offices and the transfer ofthe duties of an office so abolished to another office created by the charter, it does not require that either alternative be adopted or utilized by the county, nor does it require that such constitutional officers be intrinsically included or excluded as charter officers, or designated as such in any charter adopted by the county. Cf. ss. 11(1)(a), 11(1)(f), 24, Art. VIII, State Const. 1885, as amended; ss. 601.1(a), and (b)(2), (3), (4), (5), 602, 602.1, Art. VI, and ss. 1507, 1508, 1511, 1512, Art. XV, ch. 70-966, Laws of Florida, the Volusia County Charter Act; see also
s. 2, ch. 70-967, relating to the Volusia County Charter Act; and AGO 073-356, Questions One and Two, concluding that a county home rule charter could abolish all the constitutional officers and transfer the duties thereof to other officers, but that such transfer of duties to other county officers would not remove the *3694 transferee officers from the control of Florida Statutes directed toward the constitutional officers. Section 1(d), Art. VIII in effect creates or establishes the denominated county offices and officers as constitutional officers and, absent appropriate provision in a validly adopted county charter for the abolition of any one, or more, or all of such offices and the transfer of the duties thereof to another office created by the county charter, their status as such is not affected by the adoption of a county charter under s. 1(c), Art. VIII, State Const., and part IV of ch. 125, F.S. Cf. Broward County Home Rule Charter which, except for abolishing the office of tax collector (and the office of county comptroller) and transferring the functions and duties thereof to the county department of finance (s. 4.03B. and C., Art. IV), makes no mention of the other constitutional county officers denominated in s. 1(d), Art. VIII, State Const. (s. 2.03C, Art. II of the Broward County Charter also transfers the ex officio duties of the office of the Clerk of the Circuit Court relating to `ex officio Clerk of the Board of County Commissioners' to the County Administrator `or designate' and the fiscal functions and duties of the Clerk's office relating to `custodian of all county funds, auditor and recordation of public documents' were transferred to the county department of finance by s. 4.03C, Art. IV of the Charter). See also In re Advisory Opinion to the Governor, 313 So.2d 717 (Fla. 1975), stating that the Sarasota County Home Rule Charter provided:
 ELECTED OFFICERS. There shall be a Sheriff, a Tax Assessor, a Tax Collector and a Supervisor of Elections, elected for terms of four years. They shall perform those duties prescribed by ordinance and those duties required to be performed by all the constitutional sheriffs, tax assessors, tax collectors and supervisors of elections, respectively, in the state. [313 So.2d at 721.]
The Charter also provided:
 The Review Board shall also fill vacancies as they occur in all elected county offices, providing the remaining term is fourteen months or less, otherwise a special election will be held to fill the vacancy. [313 So.2d at 719.]
That advisory opinion states in effect that s. 1(d), Art. VIII does not provide an alternative constitutional procedure for the filling of vacancies in the constitutionally prescribed county offices, and, in the absence of any other constitutional provision in derogation of the Governor's power under s. 1(f), Art. IV, State Const., to fill by appointment any vacancy in county office, the Governor was authorized to fill the vacancy in county office in the manner as provided for in s. 1(f), Art. IV.313 So.2d at 720-721.
On the foregoing considerations, and unless and until judicially determined otherwise, I therefore conclude that a chartered form of county government may be validly established for Hillsborough County under s. 1(c), Art. VIII, State Const., and part IV of ch. 125, F.S., if the constitutional officers denominated in s. 1(d), Art. VIII, are not included as charter officers but retain their present status as constitutional officers. The Constitution does not require such constitutional officers to be intrinsically included in a county home rule charter as charter officers or to be designated as such therein.
AS TO QUESTION 4:
Section 1(c), Art. VIII, State Const., which is implemented by parts II and IV of ch. 125, F.S., does not address and makes no mention of the subject of compensation of charter officers of counties operating under county home rule charters; neither does s. 1(e) with respect to the governing body of a charter county, nor s. 1(d) relating to the constitutional officers therein specified. As stated by the Supreme Court of Florida in In re Advisory Opinion to the Governor, supra, at 721, it has consistently been held that provisos or exceptions contained in constitutional provisions, such as those contained in ss. 1(d), 1(e), Art. VIII, do not enlarge or extend the sections of the constitution of which they are a part, but act as limitations on the language employed therein, and are construed strictly and limited to the objects fairly within their terms. It would therefore seem to follow that this question is not controlled by ss. 1(c), (d) and (e), Art. VIII, State Const. The only constitutional provision addressing the compensation and method of payment of `county officers' is s. 5(c), Art. II, State Const., which requires their compensation to be fixed by `law,' i.e., a law (special or general) enacted by the State Legislature. See,e.g., Advisory Opinion to Governor, 22 So.2d 398, 400 (Fla. 1945); and cf. Merriman v. Hutchinson, 116 So. 271, syllabus (1) (Fla. 1928). As indicated by Sarasota County v. Town of Longboat Key,supra, s. 1(g), Art. VIII, would not seem to operate to exclude charter counties, or the officers thereof, from the requirement of s. 5(c), Art. II, State Const., that the compensation of all county officers be fixed by law. Section 5(c), Art. II, State Const., makes no distinction between `county officers' of charter counties or those of noncharter counties; neither does it distinguish between appointive or elective officers of a county, charter or noncharter. As hereinbefore discussed, under Question Two, and as indicated in In re Advisory Opinion to the Governor,313 So.2d 717 (Fla. 1975), applying the provisions of s. 1(f), Art. IV, relating to `any vacancy in . . . county office' to a charter county and office of its tax collector, and, in Sarasota County v. Town of Longboat Key, supra, at 1201, applying s. 4, Art. VIII, — to `a county' — to a charter county, where such terms as `county' or `counties' and `county office' or `county officer' are used in the Constitution without distinction or qualification they apply to or refer both to charter and noncharter counties and the officers thereof. Thus, it appears that the Constitution requires that the compensation or salaries of all county officers of all counties, charter or noncharter, `shall be fixed by law.' s. 5(c), Art. II, State Const. However, s. 125.83(4), F.S., provides:
 The county charter shall provide that the salaries of all
county officers shall be provided by ordinance and shall not be lowered during an officer's term in office. (Emphasis supplied.)
As noted in AGO 077-88, s. 125.83(4), F.S., must be presumed to be valid and given effect until judicially determined otherwise, and this office is without the requisite authority to determine the validity of this or any other duly enacted act of the Legislature. Therefore, the validity and legal effectiveness of s. 125.83(4), F.S., are matters for the courts to resolve. However, inasmuch as s. 125.83(4), F.S., appeared to delegate to counties the power to declare what the compensation of all county officers shall be, this office did opine that this statute was constitutionally suspect as an invalid delegation of the legislative power in contravention of the constitutional requirement contained in s. 5(c), Art. II, that the salary of county officers `be fixed by law'; and concluded that until judicially determined otherwise, and pursuant to the mandate of s. 5(c), Art. II, State Const., s.125.83(4), F.S., probably could not constitutionally prescribe that a county charter provide that salaries of all county officers be provided by ordinance, or delegate to the governing bodies of the counties the authority to fix by ordinance the compensation of all county officers. Attorney General Opinion 077-88; cf. Merriman v. Hutchinson, supra, syllabus (1) at 271; State ex rel. Nuveen v. Greer, 102 So. 739, syllabus (16) and (17) at 745 (Fla. 1924). While AGO 073-356 states there exists implied authority for a `charter act [an act of, or a law enacted by, the Legislature] to fix the salary schedule of the newly created county officers,' (emphasis supplied) it found that the question of whether a county home rule charter (adopted pursuant to general law) `could authorize the county commissioners to fix the salary schedule of newly created officers is an entirely different matter,' and went on to conclude that a county home rule charter `probably cannot authorize the county commission to fix by ordinance the compensation of county officers.'
I conclude, therefore, until judicially determined otherwise, that pursuant to the mandate of s. 5(c), Art. II, State Const., s.125.83(4), F.S., probably cannot constitutionally prescribe or require that a county home rule charter provide that the salaries of all county officers be provided by ordinance, or constitutionally delegate to the governing body a home rule charter county the power to fix by ordinance the compensation or salaries of all county officers.
AS TO QUESTION 5:
Your question does not make it clear to me the nature of the alterations or adjustments `to accommodate, amplify or facilitate the particular optional form of government chosen' which the county has in mind or proposes to make in the home rule charter now under consideration. Therefore, your question must be addressed in general terms and general rules of law and statutory construction applied.
Section 125.83(1), F.S., plainly provides that a county home rule charter may prescribe one of the optional forms of government enumerated in s. 125.84 and `shall clearly define the responsibility for legislative and executive functions [as enumerated in s. 125.85 and s. 125.86] in accordance with theprovisions of [ch. 74-193, Laws of Florida, codified as parts III and IV of ch. 125, F.S.].' (Emphasis supplied.) The several optional forms of government are enumerated in s. 125.84, F.S., and each of them requires that the designated county executives or coexecutives exercise the prescribed executive responsibilitiesassigned by the charter. Section 125.81(2) defines `form of county government' to mean `that form . . . providing for the operation of a county government operating under a charter which shall be provided in the charter.' Section 125.86 requires the prescribed legislative responsibilities to be assigned to and vested in the board of county commissioners which, in addition to the other listed powers, shall have all other powers of local self-government (not inconsistent with the Constitution or general law) which have not been limited by the county charter. Section125.85(13), F.S., similarly provides that the appropriate executive officer shall have `any other power or duty which may be assigned by county charter or by ordinance or resolution of the board [of county commissioners].' (Emphasis supplied.) From a reading of part IV of ch. 125, F.S., in its entirety, it becomes apparent to me that the executive and legislative powers delegated by ss. 125.85 and 125.86, respectively, are general in nature and scope and the executive and legislative duties imposed by ss.125.85 and 125.86, respectively, likewise, are general in scope. Once a charter form of county government becomes operative, the board of county commissioners is mandated to adopt an administrative code organizing the administration of the county government and setting forth the duties and responsibilities and powers of all county officials and agencies pursuant to the provisions of the charter. Section 125.87(1), F.S. It would seem that the county could and should utilize the administrative code to make the accommodations and amplifications mentioned in your fifth question, and to effectuate the specific administrative details and procedures in the execution and enforcement of the general powers and duties prescribed by the county home rule charter, unless otherwise limited by the charter.
Both ss. 125.85 and 125.86, F.S., specify that the respective responsibilities and powers of the county `shall consist of the following powers and duties' (emphasis supplied) and s. 125.83(1), F.S., operates to require the county charter to clearly define these executive and legislative functions, powers and duties in accordance or consistent with all of the provisions of part IV of ch. 125, F.S. I therefore suggest that any `adjustment' or `amplification' of such general executive and legislative functions, powers and duties as defined in and prescribed by the proposed county home rule charter may not be inconsistent with or contravene the general powers and duties or jurisdictional executive and legislative responsibilities prescribed by ss.125.85 and 125.86, F.S., or any other section or sections of part IV of ch. 125, F.S.
It is a settled rule of statutory construction that the express mention of one thing in a statute implies the exclusion of another, expressio unius est exclusio alterius. Thus, when a statute enumerates the things on which it is to operate, or forbids certain things, it is ordinarily to be construed as excluding from its operation all those not expressly mentioned. Thayer v. State, 335 So.2d 815, 817 (Fla. 1976); Interlachen Lakes Estates, Inc. v. Snyder, 304 So.2d 433, 434 (Fla. 1973); and Dobbs v. Sea Isle Hotel, 56 So.2d 341, 342 (Fla. 1952). Moreover, when the controlling law (here part IV of ch. 125, F.S.), directs how a thing shall be done, that is, in effect, a prohibition against its being done in any other way. Alsop v. Pierce, 19 So.2d 799,805-806 (Fla. 1944); State ex rel. Reno v. Barquet, 358 So.2d 230
(3 D.C.A. Fla., 1978). See also In re Advisory Opinion of the Governor Civil Rights, 306 So.2d 520 (Fla. 1975). Along the same line, the Legislature is presumed to know the meaning of words and to have expressed its intent by the use of particular words found in a statute. Thayer v. State, supra. By the use of the imperative `shall' in both ss. 125.85 and 125.86, F.S., it appears that the Legislature intended that no alteration of or deviation from those responsibilities, functions, powers and duties prescribed by it be made in the formulation and adoption of an optional county charter or optional form of county government pursuant to part IV of ch. 125, F.S. The prescribed executive and legislative responsibilities, functions, powers and duties — unless otherwise circumscribed, qualified or added to by another section or sections of part IV of ch. 125 — are the same for any or all of the several optional forms of county government prescribed by s.125.84, F.S., and may not be altered or deviated from by the county in adopting one or the other of the prescribed optional forms of government. Subsections (1) and (3) of s. 125.84, F.S., do prescribe additional powers for the county executives or co-executives therein specified. See also the additional requirements for the charter set forth in s. 125.83, F.S.
Unless and until judicially determined otherwise, I therefore conclude that the general executive and legislative responsibilities, functions, powers and duties prescribed by ss.125.85 and 125.86, F.S., must be included in and defined by a county home rule charter adopted under part IV of ch. 125, F.S., and no alteration of or deviation from the same may be made in formulating and adopting such county home rule charter; no provision in the charter for either optional form of county government may be inconsistent with or contravene any provision for or limitations on optional county charters prescribed in part IV of ch. 125, F.S.
Prepared by: William D. Hall, Jr., Assistant Attorney General