365 So.2d 143 (1978)
MANATEE COUNTY, Florida, a Political Subdivision, Appellant,
v.
TOWN OF LONGBOAT KEY, Florida, City of Bradenton Beach, Florida, and City of Bradenton, Florida, Municipal Corporations, Appellees.
No. 53142.
Supreme Court of Florida.
October 26, 1978.
Rehearing Denied January 9, 1979.
*144 E.N. Fay, Jr. of Mann & Fay, Bradenton, for appellant.
I.W. Whitesell, Jr. of Wood, Whitesell & Karp, Sarasota; and William R. Lisch, Bradenton, for appellees.
Talbot D'Alemberte and Donald M. Middlebrooks of Steel, Hector & Davis, Miami; and Richard E. Nelson of Nelson, Hesse, Cyril & Weber, Sarasota, for Sarasota County; and Robert L. Nabors, County Atty. of Nabors, Potter, McClelland & Griffith, Titusville, for Brevard County and the State Ass'n of County Com'rs of Florida, Inc., amici curiae.
Ralph A. Marsicano, Gen. Counsel, Tampa; and Claude L. Mullis, Staff Atty., Jacksonville, for Florida League of Cities, Inc., amicus curiae.
HATCHETT, Justice.
Does Article VIII, Section 1(h) of the Florida Constitution, as implemented by Section 125.01(6)(a), (b), Florida Statutes (1975), impose a limitation only on the power of counties to levy and collect taxes? May a municipality enforce the limitation by a lawsuit? We answer both questions in the affirmative and remand these consolidated cases to the trial court. Our jurisdiction is provided by Article V, Section 3(b)(1), of the Florida Constitution.
In 1968 the people of the State of Florida approved Article VIII, Section 1(h) of the Florida Constitution, which provides:
TAXES; LIMITATION.
Property situate within municipalities shall not be subject to taxation for services rendered by the county exclusively for the benefit of the property or residents in unincorporated areas.
To implement this constitutional provision, the Legislature amended Section 125.01, Florida Statutes, by enacting Ch. 74-191, Laws of Florida, codified as Section 125.01(6)(a) and (b), Florida Statutes, which provides:
(a) The governing body of a municipality or municipalities by resolution, or the citizens of a municipality or county by petition of 10 percent of the qualified electors of such unit, may identify a service rendered specially for the benefit of the property or residents in unincorporated areas and financed from county-wide revenues and petition the board of county commissioners to develop an appropriate *145 mechanism to finance such activity, which may either be by taxes, special assessments, or service charges levied solely upon residents or property in the unincorporated area, by the establishment of a municipal service taxing or benefit unit pursuant to paragraph (q) of subsection (1) of this section or by remitting the identified cost of service paid by the taxes levied upon property situate within the municipality or municipalities to the municipality or municipalities.
(b) The board of county commissioners shall within 90 days, file a response to such petition, which shall either reflect action to develop appropriate mechanisms or reject said petition and state findings of fact demonstrating that the service does not specially benefit the property or residents of the unincorporated areas.
Following the directions of the statute, Longboat Key, Bradenton, and Bradenton Beach, presented resolutions to the Manatee County Board of County Commissioners identifying "service[s] rendered specially for the benefit of the property or residents in unincorporated areas and financed from county-wide revenues." In spite of the statute's mandatory language, the board of county commissioners took no action, as contemplated by the statute, on the resolutions. The cities filed lawsuits which were consolidated for trial.
After taking evidence, the trial court found: (1) that inequities existed between the taxes paid by property owners in the municipalities and the services received by these taxpayers from Manatee County; (2) that Bradenton and Bradenton Beach had received at least as much in services as its property owners had paid in taxes; (3) that property owners of Longboat Key had paid more in ad valorem taxes for two years than they had received in services; (4) that Manatee County must pay Longboat Key for 1975-76 the sum of $276,714.99 and for 1976-77 the sum of $227,097.10; and (5) that Manatee County must establish municipal service taxing units or districts to correct the imbalance. The county appealed the trial court's order to the Second District Court of Appeal, and the cities of Brandenton and Longboat Key cross-appealed.
The Second District Court of Appeal, in a logical and well written opinion, held: (1) that "The only services which must be considered are those rendered by the county which result `in no real or substantial benefits to the municipal property owners'," citing City of St. Petersburg v. Briley, Wild and Assoc., Inc., 239 So.2d 817 (Fla. 1970); (2) that Article VIII, Section 1(h), Florida Constitution, is a limitation not only on property taxes but also on revenue derived from other sources; (3) that "all but one of the services enumerated in the [trial court's] final judgment are being rendered exclusively for the benefit of the residents or property owners of unincorporated areas;" (4) that the trial court "was within its authority to order the county to take the steps necessary to insure that in the future the cost of such services shall be borne only by those in the unincorporated areas;" (5) that the trial court "exceeded its authority in specifically directing the establishment of taxing districts when the statute gives to the county the option of determining which method shall be followed to accomplish this result;" and (6) that a "court can properly order a county to reimburse a city for taxes already paid by its property owners which went to pay for services rendered exclusively for the benefit of unincorporated areas." The court then "fashion[ed] a suitable method for the resolution of ... [the] controversy." The case was remanded to the trial court for redetermination of what the county should be required to remit to the municipalities under a formula devised by the district court.[1]
To determine the principal questions in this important case, we must consider the following issues: (A) whether Article VIII, Section 1(h), Florida Constitution, is a limitation only on the power of a county to levy *146 and collect taxes, or a limitation on the use of all county funds; (B) whether Article VIII, Section 1(h), Florida Constitution, and Section 125.01(6), Florida Statutes, waive sovereign immunity; (C) whether a taxpayer is an indispensable party to an action brought by a municipality to remedy the effects of dual taxation under Section 125.01(6), Florida Statutes.

I
Article VIII, Section 1(h), Florida Constitution, is only a limitation on the power of counties to tax. We have so held in a number of cases. In City of St. Petersburg v. Briley, Wild and Assoc., Inc., supra, we held that this constitutional provision "prohibits the taxation of municipally-situate property by the County for any services rendered by the County where no real or substantial benefit accrues to city property from such services. Conversely, this provision permits such taxation where such service is found to be of real or substantial benefit to such property." (At 822, 823.) (Emphasis supplied.) In that case, we stated the issue presented for determination to be:
The critical question in this case is whether the expenditure of county-wide levied tax monies is authorized for the proposed project. Article VIII, Section 1(h), proscribes the use of tax monies received from taxes levied upon property situate within municipalities "for services rendered by the County, exclusively for the benefit of the property or residents in unincorporated areas." [At 821.] [Emphasis supplied.]
In resolving that issue, we said:
It is evident from such historical background that the evil sought to be remedied was the taxation of municipally-located property for services rendered by the County which result in no real or substantial benefit to such property. [At 822.] [Emphasis supplied.]
Our statements in Alsdorf v. Broward County, 333 So.2d 457 (Fla. 1976), made clear our determination that Article VIII, Section 1(h), of the Florida Constitution was a limitation on property taxation. There we said:
The mandate against city taxation for exclusive county activities is absolute and unequivocal. [Emphasis supplied.]
* * * * * *
The language of the Constitution is reasonably straightforward and unambiguous. The intent of this tax limitation provision is both obvious and understandable. [At 459.] [Emphasis supplied.]
Further, we held:
We conclude, therefore, that Article VIII, Section 1(h) of the Florida Constitution is self-executing, and that with or without legislative interpretation the courts will be required to draw the lines between acceptable and prohibited municipal taxation. [At 460.] [Emphasis supplied.]
In Tucker v. Underdown, 356 So.2d 251 (Fla. 1978), while primarily concerned with the degree of benefit that must flow to the property owners in unincorporated areas before they may be included in a municipal service taxing unit, we stated:

Alsdorf, of course, was predicated on the only provision in Florida's Constitution which expressly ties taxation to benefits received. Article VIII, Section 1(h), Florida Constitution. [At 253 n. 7.] [Emphasis supplied.]
The Third District Court of Appeal, in an indirect way, has arrived at the same conclusion. In City of Hialeah Gardens v. Dade County, 348 So.2d 1174 (Fla. 3d DCA 1977), that court stated:
In responding to this argument, we initially note that it is predicated upon the presumption that franchise fees are in fact taxes. However, as the Supreme Court of Florida held in City of Plant City v. Mayo, 337 So.2d 966 (Fla. 1976), franchise fees are not taxes, but rather consideration paid by the utility for the grant of the franchise. Thus, the prohibitions of Article VIII, Section 1(h), are not applicable to the franchise fees exacted by the County... . [At 1180.]
Following this long line of unbroken precedents, we again hold that Article VIII, Section *147 1(h), Florida Constitution, only limits the power of counties to levy and collect property taxes.

II
It is Manatee County's position that this lawsuit is prohibited by the doctrine of sovereign immunity. The county points to Article X, Section 13, Florida Constitution, which provides:
Suits against the state. 
Provision may be made by general law for bringing suit against the state as to all liabilities now existing or hereafter originating.
The Constitution, says the county, requires specific, clear, and unambiguous language in a statute to constitute a waiver of sovereign immunity. The county also argues that it enjoys the state's sovereign immunity unless the Legislature provides otherwise by general law. This sovereign immunity cannot be accomplished by local law and waiver must be clear and unequivocal. We agree. Arnold v. Shumpert, 217 So.2d 116 (Fla. 1968).
Section 125.01(6) outlines a procedure which seeks to force a dialogue between counties and municipalities regarding dual taxation problems. It suggests alternative methods for curing the effects of dual taxation. It mandates that after proper petition has been filed by a municipality, a board of county commissioners "shall within 90 days, file a response to such petition, which shall either reflect action to develop appropriate mechanisms or reject said petition and state findings of fact demonstrating that the service does not specially benefit the property or residents of the unincorporated areas."
In this case petitions were properly filed, but no action was taken by the Board of County Commissioners of Manatee County. In this state of affairs, the remedy so clearly set forth by the Legislature was frustrated. The evil addressed by the people in their constitution continued. Where the Legislature has created such a clear remedy for a specifically identified evil, a court of equity will enforce that remedy. Alsdorf v. Broward County, supra. Justice England, speaking for the court in Alsdorf, stated the conflicting considerations:
We concede, in fact, that the practical consequences of holding for the mayors may pose such horrendous fiscal problems for the administration of 67 counties that their governmental operations may be virtually incapacitated by uncertainty and lawsuits. If there were any practical way to avoid that result consistent with the Constitution, we would readily adopt it. But neither party here has offered such a solution, and we can conceive of none. We simply cannot abdicate our responsibility to follow the will of the people as expressed in the Constitution, on the grounds of administrative complexity. [At 459.] [Footnotes omitted.]
To hold that a legislative enactment providing alternative methods of relief may be enforced against a county for future tax years is far different from holding that a court may enter a money judgment against a county for past tax years. We find no authority under our constitution, the statutes, or legal precedents which support a money judgment against a county because of dual taxation problems in past years.

III
By Section 125.01(6), municipalities were granted the right to receive the monies to be remitted by the counties in their representative capacities for the benefit of municipal taxpayers. It would be an unrealistic statutory or legal procedure that allowed a municipality to petition for relief in its own name (or through 10 percent of its electors), to receive the amounts remitted by the counties in its representative capacity, but forbid it to file suit to enforce its remedy unless joined by a taxpayer. To enforce the remedy provided by this statute, a municipality may bring suit without joining a taxpayer.
This troublesome area of the law cries out for further action, including the identification of workable formulas for determining the amount and time of remittance to *148 municipalities. We are now certain, however, that courts should not fashion formulas and make choices among alternatives for counties. The Second District Court of Appeal did a fine job of resolving the issues posed in this case in a fair and workable way. Language in Alsdorf encouraged that court to draw lines and fashion remedies beyond the point that we approve today. Courts must be cautious about drawing lines in areas best suited for legislative action.
We hold that Article VIII, Section 1(h) applies only to property taxation. We are aware of the possibility that with this holding, counties may use revenues not derived from property taxation exclusively for projects benefiting residents and property in unincorporated areas causing a serious imbalance in benefits received between county and municipal property owners and residents. The Legislature must address this possibility. We further hold that Section 125.01(6) allows a court of equity to determine whether a tax supported service is "rendered specially for the benefit of the property or residents in unincorporated areas and financed from county-wide revenues." The constitutional and statutory tests are the same. We further hold that a court may order a board of county commissioners to follow the dictates of the statute, but may not enter money judgments against counties for the past tax years, and that a taxpayer is not an indispensable party to an action under Section 125.01(6).
Accordingly, the case is reversed in part, and remanded to the district court of appeal with directions that it remand to the trial court to allow the trial court (1) to determine whether law enforcement services are rendered exclusively for the benefit of residents or property in unincorporated areas, in light of the district court's comments; (2) to vacate its money judgment and its order requiring the county to establish municipal service taxing units; and (3) for further proceedings consistent with this opinion.[2]
It is so ordered.
ENGLAND, C.J., and ADKINS, BOYD, OVERTON, SUNDBERG and ALDERMAN, JJ., concur.
NOTES
[1] Before this court, the Florida League of Cities, Inc., Sarasota County, Brevard County, and the State Association of County Commissioners of Florida, Inc., filed briefs and participated in the oral argument.
[2] In light of this disposition of the case, we will not pass on the evidence questions urged by the parties.