## TOWN OF PALM BEACH et al. v. PALM BEACH COUNTY
### Case No. 82-5252-CA(L) 01 E
Fifteenth Judicial Circuit, Palm Beach County

December 11, 1984

John A. Devault, III, Bedell, Dittmar, DeVault, Pillans & Gentry, for plaintiffs.

Robert L. Nabors, Nabors, Givlin & Steffens, for defendant.

### OPINION OF THE COURT

W.C. WILLIAMS, III, Circuit Judge.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case came on before the Court for trial without jury upon the complaint filed by the plaintiffs, Town of Palm Beach, City of Atlantis, City of Boynton Beach, City of Delray Beach, Town of Gulf Stream, Town of Highland Beach, Town of Juno Beach, Town of Jupiter, City of Lake Worth, Town of Lantana, Village of North Palm Beach, Town of Ocean Ridge, City of Palm Beach Gardens, City of Riviera Beach, Town of South Palm Beach, Village of Tequesta, and City of West Palm Beach, against Palm Beach County, pursuant to the requirements of Section 336.59, Florida Statutes (1983), to compel the County to

return to these municipalities one-half of monies utilized by Palm Beach County for road and bridge purposes for fiscal years 1977-78, 1978-79, 1980-81, 1981-82, 1982-83, and 1983-84, and not otherwise remitted to the municipalities for their use.

The plaintiff municipalities filed a three-count complaint against Palm Beach County, seeking in Count I to recover one-half of the unreimbursed ad valorem taxes collected by Palm Beach County on property within plaintiff municipalities and used for road and bridge purposes during the years in question. In Count II, plaintiffs seek to recover one-half of the non-ad valorem revenues utilized by Palm Beach County for road and bridge purposes during the years in question. Count III sought a declaratory judgment and a permanent injunction enjoining the County from continuing to violate the mandatory provisions of Section 336.59, Florida Statutes. As a result of the legislature's repeal of Section 336.59, Florida Statutes, effective October 1, 1984, plaintiffs voluntarily dismissed Count III from the complaint prior to trial of this matter.

The defendant county has denied that it is required to remit either ad valorem or non-ad valorem monies utilized by the County for road and bridge purposes, other than those raised directly under Section 336.59, Florida Statutes. In addition, the County contends that the action of the municipalities is barred by laches and/or sovereign immunity.

This cause came on for trial beginning October 1, 1984, with the presentation of evidence being concluded on October 3, 1984. After having heard the testimony presented at trial, and heard the argument of counsel for the respective parties, the Court enters the following findings of fact and conclusions of law:

## FINDINGS OF FACT
### I. Transportation Trust Fund

1. The County has, pursuant to Section 129.02(2), Florida Statutes, set up and maintained for each of the years in question a budgetary fund known as the County Transportation Trust Fund.

2. For each of the challenged years, the expenditures from such fund were for road and bridge purposes, as defined by Section 336.59, Florida Statutes.

3. For each of the challenged years, the County has funded a portion of such funds by ad valorem taxes levied under Section 336.59, Florida Statutes. The millage for the years challenged were as follows:

(a) . . . . . . FY 1977-78     .6652
(b) . . . . . . FY 1978-79     .4982
(c) . . . . . . FY 1979-80     .8420
(d) . . . . . FY 1980-81     .9102
(e) . . . . . . FY 1981-82     .0479
(f) . . . . . . FY 1982-83     .0001
(g) . . . . . FY 1983-84     .0001

4. The reduction in millage commencing in 1982-83 is a direct result of the County infusing $5,880,208 of sales tax revenues into the Transportation Trust Fund. The reduction in the millage for FY 1983-84 is the result of an infusion of $8,279,307 in sales tax into the County Transportation Fund.

## II *Capital Outlay Fund*

1. Palm Beach County has, for each of the years challenged, expended the following amounts for road and bridge purposes from the Capital Outlay Fund:

(a) . . . . . . FY 1977-78     $1,571,500
(b) . . . . . . FY 1978-79     $1,206,345
(c) . . . . . . FY 1979-80     $3,009,077
(d) . . . . . . FY 1980-81     $1,005,932
(e) . . . . . . FY 1981-82     $4,629.813
(f) . . . . . . FY 1982-83     $2,187,933
(g) . . . . . . FY 1983-84     $9,944,500 (budgeted)

2. For each of the years referenced in paragraph 1 above, a substantial portion of such monies utilized out of the Capital Outlay Fund was raised by direct ad valorem taxes levied in part on property located within the plaintiff municipalities.

3. The County has funded a portion of the Capital Outlay Fund that was utilized for road and bridge purposes by the use of non-ad valorem funds.

4. No portion of the monies so utilized through ad valorem or non-ad valorem sources has been remitted to the municipalities pursuant to the requirements of Section 336.59, Florida Statutes, for any of the year in question.

5. The sales tax was utilized by the County to fund the County Transportation Fund to avoid any meaningful levy of ad valorem taxes under Section 336.59, Florida Statutes, and to avoid the sharing provision required by Section 336.59(2), Florida Statutes, and the Court finds that such activities on behalf of the County constitutes

juggling by the County, as prohibited by the Florida Supreme Court in the case of *City of Orlando v. Orange County*, 276 So.2d 41 (Fla. 1973).

6. Section 336.59(2) requires the County to make payments to the cities in accordance with the schedule set out in Section 197.0124, Florida Statutes (1983), which requires payments be made shortly after the taxes are collected. The County's own expert witness, Mr. Young, admitted that the County violated those provisions and did not make timely payments to the cities in FY 1982-83. Plaintiffs' expert, Mr. Kelton, testified without contradiction that as of the date of trial (although the fiscal year had ended), the County still had not made any payments to the cities for FY 1983-84. By these and the other actions described herein, the County has consistently failed to comply with the language and the spirit ofSection 336.59.

### III. *General Fund*

1. The County has funded the Engineering Department for fiscal years 1981-82, 1982-83, and 1983-84 from the General Revenue Fund through the use of both ad valorem and non-ad valorem funds.

2. For fiscal years 1981-82 and 1982-83, the functions of the Engineering Department that were designated in such budgets as administration, coordination, construction coordination, survey, design, and land acquisition were, in part, services provided for road and bridge purposes. For fiscal years 1983-84, these same functions were designated as administration, construction, coordination, and services in that budget year.

3. While an attempt was made by the County to charge a portion of such expenditures back to the proper fund, substantial services performed by the County Engineering Department related to these activities were, in fact, road and bridge related expenditures and were funded by both ad valorem taxes and non-ad valorem funds without remitting to the cities as required by Section 336.59, Florida Statutes.

### IV. *Federal Revenue Sharing*

1. Palm Beach County has for each of the years challenged, expended the following amounts for road and bridge purposes funded from Federal Revenue Sharing Funds:

(a) . . . . . . FY 1977-78    $1,323,242
(b) . . . . . . FY 1978-79    $1,170,355
(c) . . . . . . FY 1979-80    $1,015,579
(d) . . . . . . FY 1980-81    $3,070,650
(e) . . . . . . FY 1981-82    $2,693,069

(f) ......FY 1982-83      $1,374,334
(g) ......FY 1983-84      $5,543,332 (budgeted)

2. That the use of Federal Revenue Sharing Funds is limited to those uses which are otherwise legal under the applicable law of the governing body utilizing such funds.

3. Palm Beach County has utilized Federal Revenue Sharing Funds for road and bridge purposes without placing such funds into the County Transportation Trust Fund or sharing such funds with the municipalities pursuant to Section 336.59, Florida Statutes. The Court finds that Federal Revenue Sharing Funds are not covered by the provisions of Section 336.59, Florida Statutes.

## V. *Laches or Estoppel*

1. The County has failed to offer any evidence (much less the "clear and positive" evidence required) to show injury or prejudice arising as a result of the delay by the municipalities in instituting this suit.

2. It is apparent that the municipalities made no objection to the County during the period in which the County was funding the road and bridge fund at a level sufficient to meet the needs of the cities, as well as the County [*i.e.,* FY 1979-80, .8420 mills; FY 1980-81, .9102 mills]. Nevertheless, the County drastically reduced the millage rate in the following fiscal year [FY 1981-82, .0479 mills]. The cities, through a representative group of city managers and elected officials, did protest to the County Commissioner in April, 1982; and as the result of their protest, the County Commission further reduced the millage during the next fiscal year [FY 1982-83, .0001] so that, thereafter, the cities received virtually nothing from the road and bridge fund.

3. The cities' delay in instituting the action is understandable and reasonable under the circumstances presented and is not sufficient to establish laches or estoppel.

## VI. *Damages*

1. *Transportation Trust Fund*—There is no dispute that for FY 1982-83, the County expended $5,907,591 through the Transportation Trust Fund and budgeted $8,281,616 for FY 1983-84, the great majority of which was from State sales tax revenue; that the ad valorem tax previously imposed under Section 336.59 was not eliminated, but simply shifted to the General Fund; and that the sole reason for such shifting was because, as described by County Administrator Sansbury in his testimony to the Court—this is an "inefficient tax" for the County to levy—*i.e.,* the County was required by statute to share its proceeds with the municipalities from whence it was collected.

**39**

(a) These municipalities have established that the County has "juggled" its budget for the purpose of defeating the mandatory provisions of Section 336.59 and, therefore, their entitlement to a refund from the County of their proportionate share of one-half of the amount expended through the Transportation Trust Fund for FY 1982-83, which totals $1,900,242.

(b) For the reasons set forth in the Conclusions of Law herein, this Court has reconsidered the directed verdict as to FY 1983-84. However, the Court does not accept the damage amount advanced by the cities based on the budget for FY 1983-84, but instead will award an amount equal to that awarded for the prior fiscal year, or the sum of $1,900,242.

2. *Capital Outlay Fund*—Section 336.59 and the cases construing that section require all ad valorem taxes actually expended for road and bridge purposes be shared without regard to the fund into which those taxes are placed. Plaintiffs have established substantial expenditures for road and bridge purposes from the Capital Outlay Fund. Therefore, plaintiffs are entitled to recover their proportionate share of the amounts expended for road and bridge purposes from the Capital Outlay Fund as follows:

(a) For FY 1977-78 through FY 1982-83, plaintiffs are entitled to recover ad valorem taxes in the total amount of $2,610,954.

(b) For the reasons set forth above, the Court finds plaintiffs are entitled to recover damages for FY 1983-84, but not in the amount requested. Plaintiffs shall recover for such year $166,199 for ad valorem taxes.

3. *General Fund*—Plaintiffs have established that substantial expenditures for road and bridge repairs have been made from the General Fund through the County Engineer and not charged back to the road and bridge fund. The County complains of plaintiffs' use of a "millage equivalency formula" to establish the rebates due these municipalities, but has provided no better method of calculating the damages due. The problem is two-fold, first the County failed to collect through Section 336.59 the funds used for transportation purposes, in accordance with the statute; thus some estimate must be made. Second, not all of the municipalities have joined in this suit; thus, a reduction must be made because these 17 cities are not entitled to recover for all. Plaintiffs have made the most accurate calculation possible; defendant, having violated the statute, cannot complain.

(a) For FY 1977-78 through FY 1982-83, plaintiffs are entitled to recover ad valorem taxes in the total amount of $410,478.

(b) For the reasons set forth above, the Court finds plaintiffs are entitled to recover damages for FY 1983-84, but not in the amount requested. Plaintiffs shall recover for such year $235,766 for ad valorem taxes.

## CONCLUSIONS OF LAW

1. The basis for the cause of action herein is contained in Section 336.59, Florida Statutes (1983), which provides:

"(1) The commissioner shall levy a tax not to exceed 10 mills on a dollar on all property in their county each year for road and bridge purposes. Such tax, when collected shall be paid over to the county depository and kept in a separate fund, which fund shall not be expended for any other purpose than for work on the public. roads and bridges in the county, and for the payment of the salaries of employees engaged in road and bridge work, and in providing the necessary tools, materials, implements, and equipment and for the necessary work on such roads and bridges."

"(2) One-half the amount realized from such special tax on the property in incorporated cities and towns shall be turned over to such cities, urban service districts, and towns, in accordance with the schedule required in Section 197.0124, to be used in constructing, repairing, and maintaining the roads, streets, and bridges thereof, as may be provided by the ordinances of such cities and towns; however, any such cities and towns that have no jurisdictional responsibilities for streets, roads, or bridges are authorized to exchange the funds received under this section for like amounts of unrestricted county funds."

2. This provision has been interpreted by the Supreme Court of Florida to require that all ad valorem taxes, levied under whatever authority and used by the County for road and bridge purposes, must be shared with the municipalities in accordance with Section 336.59(2), Florida Statutes.

3. Section 336.59, Florida Statutes revenues may be used by the County for any road and bridge purposes, including the construction, maintenance, and repair of such roads and bridges.

4. Section 336.59, Florida Statutes, requires the County to share one-half of the revenues utilized for road and bridge purposes with the cities and does not allow or permit the County to exchange services on roads within the cities for money required by the operation of Section 336.59, Florida Statutes.

5. Palm Beach County has used ad valorem taxes from both the

41

Capital Outlay Fund and the General Fund for road and bridge purposes and such amounts must be shared with the municipalities pursuant to Section 336.59(2), Florida Statutes.

6. A county may not defeat the sharing provisions of Section 336.59, Florida Statutes (1983), by transferring monies not originally collected pursuant to Section 336.59 into its road and bridge fund for use on its roads and bridges.

7. Palm Beach County has funded portions of the road and bridge expenditures made out of the Capital Outlay Fund and General Fund from non-ad valorem revenues. None of the monies so utilized were shared with the municipalities, pursuant to Section 336.59, Florida Statutes.

8. In funding of road and bridge expenditures out of the Capital Outlay Fund, Sections 129.011, 339.083, and 336.59, Florida Statutes, require that such monies be placed initially in the County Transportation Trust Fund and shared with the municipalities pursuant to Section 336.59(2) and then transferred to the Capital Outlay Fund. Palm Beach County's funding of capital road and bridge expenditures violates those statutory provisions and requires a sharing of those funds with these municipalities.

9. Palm Beach County has utilized sales tax funds in its Transportation Trust Fund for the sole purpose of depriving the municipalities of a dependable sum annually for road and bridge purposes and to deprive them of monies they would otherwise be entitled to under Section 336.59, Florida Statutes.

10. Palm Beach County has utilized extensive Federal Revenue Sharing Funds for road and bridge purposes without sharing the same with the municipalities pursuant to Section 336.59.

11. The prohibition against juggling of accounts that appears in the *City of Orlando v. Orange County* case applies to the County's practice of manipulating revenues and expenditures in such a manner as to deprive the municipalities of a dependable sum annually for road and bridge purposes. The prohibition prevents the utilization of any funds, whether ad valorem or non-ad valorem, to limit or severely restrict funds available to the cities for this purpose under the sharing provisions of Section 336.59.

12. Sovereign immunity presents no bar to this action by these municipalities to recover under the road and bridge fund in accordance with the opinion of the Florida Supreme Court in *Dade County v. City of Miami*, 77 Fla. 786, 82 So. 354 (1919). The case of *Manatee County*

42

*v. Town of Longboat Key,* 365 So.2d 143 (Fla. 1978), cited by the County, does not purport to overrule the *Dade County* decision nor does it have any application to an action for recovery of road and bridge taxes. Accordingly, that decision has no application to this case.

13. The period of laches now follows the statutory period of limitation [Section 95.11(6), Florida Statutes (1983)]. Section 95.11(3)(f), Florida Statutes (1983), provides for a four-year limitation period for any "action founded on a statutory liability". Each of the years for which recovery is here sought is within that four-year statutory period and, therefore, neither this action nor or any fact thereof, is barred by laches or estoppel.

14. At the close of trial, the Court directed a verdict for the County on plaintiffs' claim for fiscal year 1983-84 on the grounds that the amounts claimed were based on budgeted amounts and not actual expenditures. The evidence was uncontroverted that the final expenditures for fiscal year 1983-84 were not available at the time of trial and would not be available until thirty to ninety days after the County closed its books on September 30, 1984. The evidence clearly showed the Palm Beach County followed the same budgetary practices of using ad valorem and non-ad valorem taxes for road and bridge purposes without sharing the same with the municipalities in fiscal year 1982-83. There can be not dispute the cities will lose revenues under Section 336.59, Florida Statutes, with the only uncertainty being the total amount of such loss. Under Florida law, where a party has been damaged by the actions of another, uncertainty or difficulty in determining the exact amount of damages will not defeat the party's claim for relief. In *Twyman v. Roell,* 123 Fla. 2, 166 So. 215 (1936), the Supreme Court stated the rule to be that only where the uncertainty of damages establishes real doubt as to the cause of the damages, rather than to the amount of the damages, is it proper to find that there has been a failure of proof on the complaining party's part. Thus, this Court has reconsidered its decision as to FY 1983-84 and will award damages for such year, but not in the amounts sought by plaintiffs.

A Final Judgment will be entered in accordance with these findings and conclusions.

### FINAL JUDGMENT

This action was tried before the Court. On the evidence presented and in accordance with the Findings of Fact and Conclusion of Law entered herewith.

IT IS ADJUDGED that plaintiffs recover of defendant Palm Beach County the following sums:

1. Transportation Trust Fund
   FY 1982-83 ............................. $1,900,242
   FY 1983-84 ............................. $1,900,242
2. Capital Outlay Fund
   FY 1977-78-1982-83
     a. Ad Valorem ....................... $2,610,954
     b. Non Ad Valorem .................. –0–
   FY 1983-84
     a. Ad Valorem ....................... $166,199
     b. Non Ad Valorem .................. –0–
3. General Fund
   FY 1977-78 – 1982-83
     a. Ad Valorem ....................... $410,478
     b. Non Ad Valorem .................. –0–
   FY 1983-84
     a. Ad Valorem ....................... $235,766
     b. Non Ad Valorem .................. –0–
4. Federal Revenue Sharing
   FY 1977-78–1982-83 ..................... –0–
   FY 1983-84 ............................. –0–
            Total .......................... $7,223,881

for which let execution issue.