PER CURIAM.
This is an appeal from a final order dated August 30, 1985 based upon allegations that defendant, Palm Beach County, taxed properties within the several municipalities for the benefit of residents in the unincorporated areas.
We have considered the record and the excellent presentations in reviewing the correctness of the mentioned order. We are of the opinion that no error has been demonstrated and that the Honorable John D. Wessel, the trial judge, did fully and correctly address all the concerns of the parties. We adopt the following order as this court’s opinion:
This cause came on for hearing on August 21, 1985, pursuant to the request of plaintiffs, Town of Palm Beach and City of West Palm Beach, to enforce those provisions of this Court’s July 23, 1981, Final Judgment, sustained by the opinion of the Supreme Court of Florida in Town of Palm Beach v. Palm Beach County, 460 So.2d 879, 884-85 (Fla.1985), relating to neighborhood parks *1156 and recreation areas. Following consideration of testimony, documentary evidence and arguments of counsel, this Court makes the following findings with respect to this sole remaining issue in this double taxation litigation:
Neighborhood parks and recreation areas was one of the four services challenged by the plaintiff municipalities in this cause. At the trial on the merits held in January 1981, plaintiffs offered the testimony of County Parks Director John Dance by deposition (PX 27) and certain exhibits prepared or identified by Mr. Dance (PX 21-25). Mr. Dance defined a “neighborhood park” in accordance with the standards promulgated by the National Recreational and Park Association as follows:
“A neighborhood park is a small park within walking distance within the community in which it is located. It is up to approximately five acres in size and is designed to service only the neighborhood in which it is located.
“The court adopted that definition in its Final Judgment (page 20), as did the Supreme Court (460 So.2d at 884). Parks Director Dance, at plaintiffs’ request, further identified some nine neighborhood parks and recreation areas (plus Byrd Park, which was demolished shortly thereafter to make way for the County Administration Complex). Those parks were identified by Dance in PX 24, which was received in evidence without objection during the trial on the merits (Tr.177). This list was used not only during Mr. Dance’s testimony but also as the basis of Mr. Richard Kelton’s testimony concerning neighborhood parks (Tr.177-79), by Mr. George Frost, former County Engineer, in his testimony concerning parks (Tr.272-74), and in the testimony of Mr. Robert Burdett, Director of Recreation for the City of West Palm Beach (Tr.300-306). This evidence served as the basis for this Court’s original holding as to neighborhood parks and recreation areas; it was cited by Judge Downey in his dissent on this issue (426 So.2d 1063, 1072), and with approval by the majority of the Supreme Court (460 So.2d at 879, 884-85).
By Order dated September 11, 1981, this Court conditioned a stay during appeal upon the posting of an escrow fund. That order was affirmed by the district court, Palm Beach County v. Town of Palm Beach, 403 So.2d 631 (Fla.4th DCA 1981). To comply with that order, Mr. Dance prepared a memorandum estimating the expenses for maintaining the neighborhood parks for fiscal year 1981-82 totaling $196,-700 (DX 1 to the hearing of 8/21/85). That memorandum, dated September 9, 1981, almost two years after the preparation of DX 24, contains two neighborhood parks not contained on the original list. The most significant, American Homes Park, was not contained on the entire original Parks Inventory (PX 24); thus, it must be assumed that that park was added as a county park sometime between the time of Mr. Dance’s 1979 deposition and the date upon which the Final Judgment was to have become effective, October 1, 1981. To make its estimate of expenses for the years from fiscal year 1982-83 through 1984-85, the Plaintiffs’ expert, Richard Kelton, used the nine parks identified by Mr. Dance originally, plus the two added by him, in arriving at his escrow estimate.
Defendant Palm Beach County does not take issue with plaintiffs’ entitlement to the funds set aside for fiscal year 1981-82, with interest, but makes three principal arguments against enforcement of the Final Judgment for the fiscal years 1982-83, 1983-84 and 1984-85.
First, the County contends that because the Supreme Court’s decision in Manatee County [Manatee County v. Town of Longboat Key, 365 So.2d 143 (Fla.1979)] prohibits a money judgment for damages in a dual taxation case, to require the County to pay over to the cities their portion of monies expended by neighborhood parks in the unincorporated areas would violate that prohibition.
Contrary to the County’s position, this Court finds that the Manatee County decision supports an award in this instance. In that case, the trial judge awarded damages for the two fiscal years prior to entry *1157 of the final judgment (352 So.2d 869, 872 (Fla. 2nd DCA 1977). The Supreme Court reversed, holding the trial judge had
“no authority under our constitution, the statutes, or legal precedents which support a money judgment against a county because of dual taxation problems in past years.” 365 So.2d at 147 (emphasis added).
However, the Court further held that the trial court did have the authority to provide for the enforcement of “alternative methods of relief ... against a county for future tax years ...” (365 So.2d at 147). Thus, the Court stated,
“Where the Legislature has created such a clear remedy for a specifically identified evil, a court of equity will enforce that remedy.
“...
“... We further hold that a court may order a board of county commissioners to follow the dictates of the statute, but may not enter money judgments against counties for the past tax years.” 365 So.2d at 147-48.
In conformity with the Manatee County decision, this Court’s Final Judgment did not enter money judgments against the County for past tax years, but directed the County prior to the beginning of fiscal year 1981-82 to adopt “an appropriate mechanism to alleviate, correct, and make right those unconstitutional acts described herein for the ensuing fiscal years” in conformity with the constitutional and statutory provisions.
Rather than alter its budgetary procedures during the pendency of the appeal, the County relied upon the stay of this Court’s mandate by escrowing the amount set by the Court. Once the appeal became final, the portion of the Final Judgment ultimately sustained by the Supreme Court is effective from the date of entry, July 23, 1981, and the County, like any other litigant, is required to comply with the Judgment from that date forward. The fact that such compliance requires the County to utilize alternative (3), provided by Section 125.01(6)(a), Florida Statutes (1983) (the rebate of funds to municipalities), rather than alternative (1) (developing a mechanism to finance such activities directly from taxes, assessments or service charges levied upon unincorporated residents or property), or alternative (2) (creation of municipal service taxing unit), is based on the County’s own decision to postpone altering its budget practices (sic) completion of the appeal, thus causing alternatives (1) and (2) to be no longer available.
Requiring the County to now rebate funds expended in violation of Art. VIII, § 1(h), during the years since entry of this Court’s Final Judgment is consistent with the most important principle of equity jurisprudence: That equity will not suffer a wrong to be without a remedy [First State Bank of Clermont v. Fitch, 105 Fla. 435, 141 So. 299 (Fla.1932); Connell v. Mittendorf 147 So.2d 169 (Fla.2d DCA 1962)], and is in no manner inconsistent with Manatee County.
Secondly, the County asserts it should now be permitted to take issue with the parks originally identified as “neighborhood parks” in the prior proceedings in this case (the proffered testimony of the current County Parks Director, Dennis Eshle-man, at this hearing was that he considered only 4 of the 11 parks previously identified to be “neighborhood parks”). The parks identified by former Director Dance at the trial on the merits as added to at the second hearing, while not specifically identified in the appellate decisions, were nevertheless necessarily involved in those decisions and thus must be regarded as the “law of the case” herein. Florida Appellate Practice (The Florida Bar, Continuing Legal Education) § 15.22; State v. Thompson, 357 So.2d 428 (Fla.4th DCA 1978).
Moreover, this question appears to be governed by the following holding of the District Court herein:
“Once it has been judicially determined that a service or program is of no real and substantial benefit to the municipalities, it will be presumed that the same conditions prevail unless and until there is a judicial determination to the contrary.” 426 So.2d at 1067.
*1158 This Court interprets that language to require a party against whom a final determination has been made to make a showing of some factual change in circumstance as to the service or activity (as opposed simply to a change in personnel or interpretation), in order to alter the continuing effect of a judgment duly litigated and finally determined. No such showing has been made here by the County, the party charged with the burden of proof.
Finally, the County attempts to limit the amount payable to the municipalities to one fiscal year, because the amount set aside in escrow was determined to be the amount which was anticipated to be expended for one fiscal year. While no one anticipated that this case would be in the appellate courts for more than three and one-half years at the time the escrow fund was established, there is no suggestion in any of the prior Orders of this Court establishing the escrow as a condition for the stay that the amounts escrowed would bear any relation to the award, if any, that the County would ultimately be required to rebate following appeals. (See Order, 9/11/81, affirmed, 403 So.2d 631; Order, 10/5/81; and Order, 10/28/81). As stated in this Court’s Order denying the motion to vacate the stay:
“[T]o deny a municipality a constitutional redress after a hearing would essentially emasculate the intention of the constitutional provision and obviate the framers’ clear intention as stated in Article 8, Section 1(h), and the implementing legislation, together with the limitations imposed on its application in Manatee County v. Longboat Key, 352 So.2d 869, 365 So.2d 143 (Fla.1978).
“Finally, the imposition of the conditions of this stay are not a supersedeas bond but are an escrow of those amounts this Court has determined previously are necessary to protect both the cities and the county, pending the disposition of this litigation.
“...
“The County consistently takes the position that the cities’ constitutional rights and remedies accrue only upon the exhaustion of all appeals throughout the appellate process, regardless of how long it takes and that no conditions of a stay should be imposed. The Court previously has ruled opposite to this position and maintains that ruling.” Order, 8/20/82.
Accordingly, the Court rejects the contention that the amounts which are required to be rebated are limited by the escrow fund established in 1981.
Having heard the testimony presented and having reviewed the documentary evidence upon which it is based, the Court concludes that the costs of construction and maintenance of neighborhood parks set out in PX 1 (hearing of 8/21/85) are reasonable and as accurate as can be established under the records system employed by the County. Under alternative (3) of § 125.01 (6)(a), Fla. Stat., the amounts are required to be rebated within six months of the adoption the County’s annual budget. Accordingly, plaintiffs are entitled to interest at the statutory rate of 12 percent per annum from April 1 of each fiscal year until paid (see Argonaut Insurance Co. v. May Plumbing Co., 474 So.2d 212 (Fla.1985); Section 687.01, Florida Statutes (1983).
IT IS ORDERED AND ADJUDGED:
1. The defendant, Palm Beach County, having been declared to be in violation of Art. VIII, § 1(h), Fla.Const., for constructing and maintaining its neighborhood parks and recreation areas located within the unincorporated area of Palm Beach County from taxes collected on a countywide basis, shall cause to be paid over to the plaintiffs, Town of Palm Beach and City of West Palm Beach, the following amounts:
*1159 FY 81-82 FY 82-83 FY 83-84 FY 84-85 TOTALS
(a) Town of Palm Beach $16,169 14,631 18,437 35,088 $84,325
Interest @ 12% to 10/01/85 6,791 4,389 3,319 2,105 16,604
Total $22,960 19,020 21,756 37,193 $100,929
(b) City of West Palm Beach $13,985 13,633 17,532 28,118 $73,268
Interest @ 12% to 10/01/85 5,874 4,090 3,156 1,687 14,807
Total $19,859 17,730 20,688 29,805 $88,075
In the event payment is not made by October 1, 1985, plaintiffs shall be entitled to interest at the statutory rate on the total amounts shown until paid;
2. Defendant Palm Beach County is directed to develop an appropriate mechanism to comply with the provisions of § 125.01(6)(a), Fla.Stat., as to the construction and maintenance of neighborhood parks and recreation areas in the unincorporated areas for fiscal year 1985-86. and the ensuing fiscal years; and
3. This Court retains jurisdiction to exercise this Court's inherent equitable authority to enforce all of the provisions of this Order and any other necessary orders and to assess costs, if there be any.
The order is
AFFIRMED.
ANSTEAD, WALDEN and STONE, JJ., concur.